JANVIER, Judge.
This suit grows out of a rather complicated real estate transaction as a result of which the defendant, William C. Copping, gave to the plaintiff, Abraham Solomon, a check for $1,000 and then, before the check could be availed of, stopped its payment on the ground that he had received no consideration for it.
The somewhat involved facts are as follows:' The plaintiff, Abraham Solomon, was originally the owner of the property, 727 Felicity Street, in New Orleans. It was subject to a first mortgage in favor of Columbia Homestead Association in the original sum of $7,500. Solomon sold the property to Copping for $25,500 of which $3,500 was paid in cash. In payment of the remainder of the purchase price Copping assumed the unpaid portion of the mortgage loan in favor of Columbia Homestead Association; that remainder, with interest, amounting to $5,644.47, and he executed a second mortgage in favor of Solomon in the amount remaining due on the purchase price of the property. In the mortgage which Solomon had executed to Columbia Homestead Association and which was assumed by Copping, it was provided that the property might not be transferred and the mortgage might not be assumed by any one else except with the express consent of the mortgagee homestead association. In the sale by Solomon to Copping there was no such stipulation.
Sometime after Copping had purchased the property from Solomon for $25,500 he was able to secure prospective purchasers, Henry Alvin Strauss and Harry Middleberg, who agreed to purchase the property for $27,500 provided they could he permitted to assume the first mortgage held by the homestead association and could also assume the second mortgage obligation of Copping in favor of Solomon.
It appears that the homestead association was agreeable under certain conditions, but Solomon, not knowing whether as a matter of law he could, by objection, prevent the assumption of the second mortgage, did not consent thereto.
One of the attorneys of the homestead association advised the prospective purchasers, Strauss and Middleberg, that it would be unwise for them to take title to the property without the written consent of Solomon.
While the record does not make it clear just how the negotiations for the issuance by Copping of the check for $1,000 were *751 initiated, it seems quite certain that, whether or not Solomon could in fact have prevented the sale by Copping to Strauss and Middleberg, or whether he would have had the right to foreclose the mortgage which he held if the property should be transferred without his consent, it is made very clear that the purchasers, fearing such a possibility, were unwilling to take title except with the consent of Solomon.
Possibly Copping, by a suit for specific performance, could have compelled Strauss and Middleberg to accept title even without the consent of Solomon, but Copping chose not to resort to that legal proceeding and, instead, agreed that if Solomon would sign the necessary agreement demanded by Strauss and Middleberg he, Copping, would pay to Solomon the $1,000 on which this suit is based. Accordingly Solomon signed a letter presented to him and directed to Copping and Strauss and Middleberg, and in that letter agreed that the sale might be made and the mortgage might be assumed and that he would appear at the act of sale from Copping to Strauss and Middleberg and would sign that act of sale and assumption as a witness. Solomon did appear and did sign the said act of sale as a witness and at that time Copping, in accordance with the agreement, gave to Solomon the check for $1,000 and then, by order on the bank on which it was drawn, stopped payment before the check could be cashed.
It is contended by Copping that since, in the deed from Solomon to Copping there was no clause prohibiting the contemplated sale and assumption, Solomon had no legal right to object to the assumption of his mortgage by Strauss and Middleberg and had no legal right to object to the assumption by them of the mortgage held by Columbia Homestead Association and that therefore, since he could not have prevented the sale of the property and the assumption of those mortgages, he, in agreeing that the transaction might be carried out in that way and in signing the act of sale as a witness, did no more than, he was required to do by law and that consequently he gave no consideration for the $1,000.
There was judgment in the Civil District Court for the Parish of Orleans in favor of Solomon as prayed for and Copping has appealed. The District Judge in his reasons for judgment made the following statement:
“ * * * as the court views the matter, the sole issue presented is whether or not there was lack of consideration. The elements of a valid contract are present. C.C. 1779.
“The Court is of the opinion that there was a lawful purpose and consideration for the check as above set forth; that Solomon’s obligation to the Homestead and his second mortgage could have been jeopardized by virtue of the transaction, particularly if Messrs. Strauss and Middleberg did not pay the first mortgage note, to say nothing of the second mortgage note, or let the property deteriorate. Further, Copping, Strauss and Middleberg were relieved of the trouble and expense of re-financing the loans.”
We agree with the above quoted statement of the District Judge.
It is true that it is well settled that, where there is in an act of mortgage no statement to the effect' that it cannot be assumed without the written consent of the mortgagee, the transfer of property may be made and the mortgage may be assumed since the assumption by the new purchaser in no way relieves the original mortgagor of the mortgage obligation. L. Klein, Inc. v. Escarra, 10 La.App. 749, 122 So. 880 and Maxwell v. Deano, La.App., 141 So. 420.
However, here the purchasers refused to accept title without the written consent of Solomon, and whether they may have been compelled to accept title is a question which is not presented in this matter. Copping, being confronted with their refusal, instead of attempting to force them *752 to take title, negotiated with Solomon in an effort to obtain the consent demanded by Strauss and Middleberg. There was in Solomon no obligation whatever to sign any such agreement or to appear as a witness in the act of sale, and it was to obtain his consent and his approval that the check for $1,000 was given.
We think, as did the District Judge, that there was consideration for the amount represented in the check.
Accordingly the judgment appealed from is affirmed at the cost of appellant.
Affirmed.