STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-51

ALICIA JOHNSON BUTLER

VERSUS

BEGNAUDS, LLC, ET AL.

**********

SUPERVISORY WRIT FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 130,283
HONORABLE ANTHONY THIBODEAUX, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, John E. Conery, and Van H. Kyzar, Judges.

WRIT DENIED.

Conery, J., concurs.

Ronnie J. Berthelot
The Law Offices of Herschel C. Adcock, Jr., L.L.C.
13541 Tigerbend Road
Baton Rouge, LA 70817
(225) 756-0373
COUNSEL FOR DEFENDANT/APPLICANT:
     Home Point Financial Corporation f/d/b/a
     Stonegate Mortgage Corporation

Darleen M. Jacobs
Al A. Sarrat
Rene D. Lovelace
Jacobs, Sarrat, Lovelace, Harris & Matthews
823 St. Louis Street
New Orleans, LA 70112
(504) 522-0155
COUNSEL FOR PLAINTIFF/RESPONDENT:
     Alicia Johnson Butler

James Michael Wooderson
Attorney at Law
903 West University Ave.
Lafayette, LA 70506
(337) 504-4434
COUNSEL FOR DEFENDANT/RESPONDENT:
     Begnauds, LLC
     Eddie Begnaud Builders, LLC

Patrick M. Wartelle
Leake & Anderson
P. O. Drawer Z
Lafayette, LA 70502
(337) 233-7430
COUNSEL FOR DEFENDANT/RESPONDENT:
     Begnauds, LLC
     Eddie Begnaud Builders, LLC

Lloyd J. Durocher
14336 St. Elmo Road
Erath, LA 70533
COUNSEL FOR DEFENDANT/RESPONDENT:
     Begnauds, LLC
     Eddie Begnaud Builders, LLC

**SAUNDERS, Judge.**

Defendant-relator seeks supervisory writs from the judgment of the Sixteenth Judicial District Court, the Honorable Anthony Thibodeaux presiding, which denied its motion for summary judgment.

**STATEMENT OF THE CASE**

The instant case arises from a construction loan agreement between plaintiff, Alicia Johnson Butler, and relator, Home Point Financial Corporation f/d/b/a Stonegate Mortgage Corporation. Plaintiff used the money to build a single-family residence. After plaintiff defaulted on the promissory note, she filed a Petition for Breach of Contract, Damages and Attorney's Fees, alleging that various defects existed in the construction of the home. Plaintiff named relator as one of the defendants, claiming that relator employed an inspection company who failed to properly inspect the construction, and then negligently approved draws under the loan to pay the builder. Plaintiff claims that she relied upon relator to ensure that all advances under the loan would be based upon a finding of good and workmanlike construction.

In response, relator filed a reconventional demand for all sums owed by plaintiff. Relator then filed a motion for summary judgment on the reconventional demand. Following a hearing held on December 14, 2018, the motion was denied. A written judgment was signed on January 18, 2019. Relator is now before this court on writs seeking review of the trial court's ruling.

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. *See* La. C.C.P. arts. 2087 and 2201." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933. *But see* La.Code Civ.P. art. 2083, comment (b), "Irreparable injury continues to be an important (but not exclusive) ingredient in an application for supervisory writs." (Citation omitted.)

## ON THE MERITS

Relator asserts that it acquired all rights, title and interest in a promissory note signed by plaintiff which is secured by a mortgage granted by plaintiff. Plaintiff failed to pay fifteen installments despite default notices sent to her home by relator. Relator contends that plaintiff's petition and supplemental and amending petition concern unliquidated contingent claims—builder deficiencies—that are not yet ready to be proven. Relator's reconventional claim, however, which seeks to prove an obligation that is easily calculated by accepted legal standards is easily confirmed by the production of the note and mortgage and the affidavit of relator's representative to establish the total amount owed. The reconventional demand, relator maintains, should not be delayed by plaintiff's claim.

Next, relator agues plaintiff must raise an issue that is a "new matter" concerning the enforcement of the promissory note and mortgage, citing *Bienvenu v. Allstate Insurance Company*, 01-2248 (La.App. 4 Cir. 5/8/02), 819 So.2d 1077. In *Bienvenu*, the court stated, "Louisiana jurisprudence defines an affirmative defense as a defense that 'raises a **new matter**, which assuming the allegations in the petition are true, constitutes a defense to the action.' *Allvend, Inc. v. Payphone Commissions Co., Inc.*, 2000-0661, p. 3 (La.App. 4 Cir. 5/23/01), 804 So.2d 27, 29 (emphasis added)." *Id*. at 1080. Relator maintains that plaintiff cannot assert her

builder deficiency action as a new matter to its reconventional demand because plaintiff is not ready, now, to prove her case. Unliquidated, contingent claims as asserted by plaintiff are not defenses to relator's reconventional demand and cannot defeat relator's motion for summary judgment.

Relator also urges that it presented factual support for every legal element of its claim:

1) A certain sum of money was loaned to plaintiff by relator;

2) Plaintiff signed and executed a promissory note evidencing the loan;

3) Plaintiff granted a mortgage securing the loan; and

4) Plaintiff failed/refused to repay the loan per the promissory note.

Relator asserts that the burden now shifts to plaintiff to present evidence to defeat summary judgment.

In support of its argument, relator cites *American Bank v. Saxena*, 553 So.2d 836 (La.1989), wherein a bank filed three subsequently consolidated actions seeking to enforce five delinquent promissory notes. The borrower filed an answer and a reconventional demand. The supreme court held, in part, that the borrower was not entitled to use tort claims as a setoff against the amount owed to the bank.

Next, relator distinguishes the jurisprudence cited by plaintiff in her opposition to its motion for summary judgment. First, in *Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc.*, 579 So.2d 1115 (La.App. 2 Cir.), *writ denied*, 587 So.2d 695 (La.1991), the bank brought an action against borrowers to recover on notes. The lower court granted the bank's motion for partial summary judgment. On appeal, the court held that genuine issues of material fact existed as to whether the commitment letter altered the maturity dates of notes, whether repayment was conditioned on sale of lots in the development, and whether the bank substantially breached the overall agreement to the extent of excusing the

3

borrowers' nonperformance. Although relator herein concedes that some of the issues therein are presented in this case, relator urges that the second circuit case must be juxtaposed with two cases from this court, *Malcombe v. LeBlanc*, 539 So.2d 665 (La.App. 3 Cir. 1989), and *Premier Bank, Nat.'l Ass'n v. Percomex, Inc.*, 615 So.2d 41 (La.App. 3 Cir. 1993), both of which are discussed below, and one case from the supreme court, *American Bank*, 553 So.2d 836. Second, in *KeyBank Nat'l Ass'n v. Perkins Rowe Associates, LLC.*, 823 F.Supp.2d 399 (M.D. La. 2011), *aff'd,* 502 Fed.App. 407 (5th Cir. 2012), a bank brought an action against a subcontractor to determine the ranking of security interests in a real estate development. The bank held a mortgage (the result of an assignment from the mortgagee), and the subcontractor held construction liens. The parties moved for summary judgment to determine the ranking of security interests, and there was no discussion of the types of claims. As such, the relator herein urges this court to disregard the decision in *KeyBank*.

In *Malcombe*, 539 So.2d 665, partners/sole stockholders in a health club borrowed money from a bank and executed a demand promissory note evidencing the loan. The loan was secured by stock and a certificate of deposit (CD). When the club began having financial problems, the bank set off the CD to reduce the loan balance. When the financial problems did not resolve, plaintiff and defendant stockholders entered into an act of subrogation to which the bank was not a party. Eventually, plaintiffs filed suit against defendants for breach of the agreement. At this time, plaintiffs also named the bank as a defendant, asserting that the bank did not have the right to a setoff against the CD. The bank filed a reconventional demand, asserting that the collateral pledge agreement provided the right to a setoff. The lower court agreed and granted the bank's motion for summary judgment. On appeal,

4

this court held, in part, that the evidence called into question whether payments on the debt were current at the time of the offset.

In *Premier Bank*, 615 So.2d 41, the bank brought an action against a debtor and its personal guarantors for a money judgment on promissory notes. The debtor filed a reconventional demand, alleging that the bank damaged the debtor's inventory and breached its implied obligation of good faith by requesting additional collateral and promising to extend the loan for an additional ninety days. The lower court granted summary judgment in favor of the bank, finding that the debtor's defenses and reconventional demand were unliquidated tort claims and had nothing to do with the liability on the promissory notes. On appeal, this court held that the debtor did not deny signing the notes, receiving the money, or pledging collateral as security as required to establish a defense to liability on the notes.

Likewise, relator in the instant matter argues that plaintiff's claim has nothing to do with her obligation to repay the loan she obtained to build her home. Relator complains that plaintiff offered her self-serving affidavit in support of her claim that she should not have to repay the money she borrowed from relator because relator allegedly hired a company to inspect the construction upon which she relied to her detriment. Relator points out that in plaintiff's affidavit, she did not deny: 1) that she signed the promissory note and mortgage, 2) that she approved advances of money under the note to construct her home, and 3) that she failed to pay relator per the terms and conditions of the promissory note. The only reasonable conclusion, relator maintains, is that plaintiff has no defense to her liability under the promissory note and mortgage.

Relator also asserts that the construction loan agreement is clear and unambiguous regarding plaintiff's obligation to ensure that the home was being constructed properly. Relator identifies several excerpts from the agreement

5

wherein plaintiff agreed to notify relator if work was not done correctly and when work was complete. Further, plaintiff agreed to the following:

> **2.1.7. I Am Responsible for the Work.** I have full and sole responsibility to make sure the Work complies with the Plans and all Government Regulations. Lender has no liability, obligation or responsibility for the Work. Lender is not liable for any failure to construct, complete, protect, or insure the Work. Lender is not liable for any costs of the Work. . . .

Relator concludes that plaintiff's claim of detrimental reliance upon relator to ensure all work was done properly before advancing funds is unsupported and contradicted by the loan agreement.

Additionally, relator contends, detrimental reliance is not a defense to its motion for summary judgment. Relator urges that the obligations between it and plaintiff are governed by a credit agreement under Louisiana law. Further, any alleged duty or obligation or theory of recovery cannot form the basis of a new contract when a credit agreement already exists or be implied from the existing contract. La.R.S. 6:1123.

Relator also maintains that the conditions to advances proscribed by the loan agreement in section 2.8.4 cannot be interpreted to modify relator's status as a lender:

> **2.8.4. Advances; Conditions To Advances.** Each of the promises I make in this Loan Agreement shall be considered made again as of the time (i) Lender, or Lender's escrow agent, receives any request from me and Contractor for an Advance ("Request for Advance"); or (ii) I endorse any Loan Proceeds check to Contractor or a Supplier. Lender will hold 10% of each Advance for the Work ("Holdback"). Lender will disburse Holdback only as part of the final Advance. Advances will be made as work is completed and verified by inspection of appraiser or HUD consultant, contractor and borrower – but only if all the following conditions are satisfied: . . .

The agreement, relator adds, was prepared by Fannie Mae and is part of the national uniform agreements for this type of loan. Relator avers that the language does not

create a contractual duty for the lender as claimed by plaintiff. *See Hunter v. Sterling Bank*, 750 F.Supp.2d 530 (E.D. Pa. 2010).

Next, relator argues that the standard of review is not manifest error but rather whether the trial court's interpretation of the contract is legally correct or legally incorrect.

> Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect.

*Industrial Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Mem'l Trust*, 32,048, pp. 2-3 (La.App. 2 Cir. 8/20/99), 751 So.2d 928, 933, (citations omitted), *writs denied*, 99-2948, 99-2958 (La. 12/17/99), 752 So.2d 166.

Relator also urges that plaintiff's affidavit supported its motion for summary judgment. Plaintiff testified that relator hired an inspection company to inspect the property which, if true, would have been proper under the loan agreement. Relator points out, however, that there is no evidence that relator inspected the property. Also, relator maintains that an inspection is not material to its motion for summary judgment and is not an affirmative defense upon which plaintiff may rely.

Lastly, relator argues that plaintiff's belated attempt at discovery should not impede its motion for summary judgment. Relator complains that plaintiff's petition has been pending since May 22, 2017, and that she has not conducted any discovery other than propounding interrogatories and requests for production of documents. Further, relator's motion for summary judgment has been pending since October 31, 2017, and again, plaintiff has not conducted any discovery regarding her claims of faulty construction. Relator concludes it has demonstrated that its claim against

7

plaintiff is separate and distinct from her claim against relator and urges that there are no genuine issues of material fact as to its claim.

To date, plaintiff has not filed an opposition to relator's writ application. In her memorandum in opposition to relator's motion for summary judgment, she argued that the key provision relator breached is 2.8.4.2, a subsection of 2.8.4 quoted above. The provision reads as follows:

> **2.8.4.2. Work Completed; Invoices and Lien Waivers.** The Work for which an Advance is requested has been completed in a good and workmanlike manner, and complies with the Construction Contract, the Plans, the Permits, and all Government Regulations.

Plaintiff asserted that relator's argument omits the fact that the note is not the only agreement between plaintiff and relator and that the contract represents the larger agreement between the parties of which the note is a part. Because plaintiff has asserted a claim for the breach of this larger agreement, plaintiff concludes that the claim is a potential defense to the relator's reconventional demand.

Plaintiff also objected to No. 12 of relator's affidavit introduced in support of its motion, which declares that the principal amount owed by Plaintiff to Relator is Four Hundred Five Thousand Eight Hundred Sixty and 10/100 ($405,860.10) Dollars. Plaintiff argued that the affiant could not know whether or not she owed anything to relator as it was for the trier of fact to decide.

Next, plaintiff maintains that relator omitted critical distinctions in the jurisprudence concerning the conclusions drawn by the supreme court in *American Bank*, 553 So.2d 836, citing *Ouachita National Bank*, 579 So.2d 1115. In *Ouachita National Bank*, the defendants acknowledged signing the notes at issue. The defendants, however, alleged that their nonperformance under the notes was excused because the plaintiff breached a larger, overall agreement between the parties. The court concluded that the breach of the larger agreement may be a defense because

8

unlike the situation in *American Bank* (the notes were the only contracts between the parties), the agreement was "decidedly not unrelated to the notes." *Id*. at 1122. Because the record contained disputed facts regarding the plaintiff's alleged breaches of the overall agreement and whether those breaches were substantial enough to excuse the defendant's non-performance, the court denied summary judgment.

Likewise, plaintiff herein argued that the promissory note at issue herein was not the only agreement between the parties and was part of a larger agreement. Further, plaintiff referred to *American Bank*, 553 So.2d 836, wherein the plaintiff was unable to produce a letter that was alleged to memorialize an agreement outside the promissory note. As such, plaintiff concludes that relator's breach of the terms of the contract excuses her nonperformance under the note.

In addition to *Ouachita National Bank*, 579 So.2d 1115, and *KeyBank*, 823 F.Supp.2d 399, plaintiff cites *Geaux Live Digital, L.L.C. v. Taylor and Ross Entertainment, L.L.C.* 11-601, 2012 WL 13001902 (M.D. La. 6/27/12), wherein the defendants' unpaid promissory notes were found to be within the context of a larger commercial relationship between the defendants and the plaintiff financier. When the defendants failed to pay on the promissory notes, the plaintiff filed suit on the notes. In turn, the defendant filed a counterclaim for breach of contract—failure to timely disburse funds under the loan agreement resulted in production delays. The plaintiff subsequently moved for summary judgment on the promissory notes. The court, however, found that the alleged breach of the underlying loan agreement by the plaintiff was a valid defense which precluded summary judgment.

In the instant case, plaintiff urged that her claims are not limited to claims of faulty construction as stated by the relator, but include detrimental reliance, relator's responsibility for the inadequate inspection of the property, and breach of contract.

9

These claims, plaintiff concluded, are intertwined with the reconventional demand and should be heard at the same time as the reconventional demand.

## CONCLUSION

Relator seeks review of the trial court's January 18, 2019 denial of its motion for summary judgment. In light of plaintiff's argument that the promissory note is part of a larger, overall agreement (the construction loan agreement), along with the language of the agreement, we find no error in the trial court's ruling that relator is not entitled to summary judgment. Accordingly, relator's writ application is denied.

**WRIT DENIED.**